UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-184-KSF

TERI MOSIER                                                                PLAINTIFF

v.                                     **OPINION AND ORDER**

THE COMMONWEALTH OF KENTUCKY. *et. al.*                DEFENDANTS

\* \* \* \* \* \* \*

This matter is before the Court on cross motions of the parties for summary judgment. The motions have been fully briefed and are now ripe for consideration.

Plaintiff, Teri Mosier, filed this action against Defendants, the Commonwealth of Kentucky (the "Commonwealth"), Administrative Office of the Courts ("AOC"), Chief Justice John D. Minton, Jr. and Laurie K. Dudgeon,[1] (collectively, "Defendants"), seeking injunctive relief and compensatory damages pursuant to the Americans with Disabilities Act and the Rehabilitation Act. Plaintiff claims she requested that Defendants provide interpreter services for her so that she is able to participate fully in court proceedings, and Defendants refused to do so which makes her unable to represent clients in Defendants' courts.

I.     **FACTUAL BACKGROUND**

Plaintiff is an attorney licensed to practice law in Kentucky since 1999. She is deaf and is substantially limited in the major life activities of hearing and speaking and is unable to participate

---

[1] Plaintiff originally filed this action against Jason Nemes in his official capacity as director of the AOC. Mr. Nemes is no longer the director of the AOC and Ms. Dudgeon is his successor.

1

fully in court proceedings without appropriate auxiliary aids or services, but she alleges that she is able to participate fully when auxiliary aids or services, such as a qualified sign language interpreter, are provided. Defendants do not contest these claims for purposes of this motion.

By way of affidavit, Plaintiff claims that in February 2007, she went to the Jefferson County District Court to determine whether Defendants would provide her with interpreter services as a litigant and as an attorney. Reese Greer, the court clerk, told her to contact the AOC. On March 5, 2007, Mr. Greer told her that the AOC would provide her with an interpreter in her capacity as a litigant and as an attorney. Later that month, Plaintiff began working for the Department of Public Advocacy ("DPA") and the DPA contacted the AOC to confirm that the AOC would provide interpreter services for her appearances in court. On March 28, 2007, Scott Furkin, general counsel for the AOC, informed the DPA that the AOC had not yet opined on whether it must provide her with an interpreter when she appeared in court as an attorney, but that he suspected it would need to do so. Over the next three months, the Kentucky Office of Vocational Rehabilitation ("OVR") agreed to provide interpreter services for Plaintiff's court appearances, until July 15, 2007.

On July 3, 2007, Plaintiff sent an email to Jean-Joseph Saulnerond, assistant unit supervisor in the AOC's Pretrial Services/Interpreting Division, asking that interpreters "be provided in the Johnson County District Court" for her after July 15th. On July 5, 2007, Mr. Saulnerond responded that the AOC does not provide interpreters for the DPA or other agencies but only for the Kentucky Courts of Justice, and the AOC would need to receive a formal request from the Johnson County District Court to provide an interpreter for her. Plaintiff went to the Johnson County District Court to request interpreter services and was told that she needed to contact the AOC. Soon thereafter, the clerk told Plaintiff that the AOC would not provide interpreter services for attorneys.

Plaintiff has presented affidavits from potential clients that have been unable to engage

Plaintiff as their attorney, and she has submitted an affidavit stating that she has refused a number of requests for representation and has not been able to advertise that she can represent clients in court because Defendants will not provide her with an interpreter for court appearances.

Through an affidavit by Ervin Dimeny, Defendants assert that all interpreting services are coordinated through the Court Interpreting Services Division of the AOC and that they have a policy that they do "not provide interpreting services for attorneys, public defenders, law enforcement officers, jail officials, other state agency employees, social workers or mental health workers." This policy became effective on October 1, 2004. Dimeny's affidavit states that the AOC, on occasion, receives requests from attorneys for interpreting services and the standard procedure is to explain that the AOC policy does not allow for the provision of interpreters to attorneys.

## II.   ANALYSIS

### A.   Defendants' Cross-Motion for Summary Judgment

In their cross-motion for summary judgment, Defendants argue that the Plaintiff's ADA and Rehabilitation Act claims fail because: (1) Plaintiff lacks standing to pursue her federal claims and to obtain injunctive relief; and (2) Plaintiff's claims are time-barred. Defendants also argue that Plaintiff's Rehabilitation Act claim fails because Plaintiff cannot demonstrate that Defendants' policy of not providing interpretive services to attorneys is based solely on disability and that her ADA claim fails because it is barred by sovereign immunity.

#### 1.   Standing

Defendants' argument that Plaintiff lacks standing because she has not suffered an injury as a result of Defendants' policy fails. Plaintiff must demonstrate three things to establish standing under Article III of the Constitution: (1) she must show that she suffered an "injury-in-fact;" (2) she must demonstrate a causal connection between the asserted injury-in-fact and the challenged action

of the defendant; and (3) she must show that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

First, Defendants argue that Plaintiff has not suffered injury-in-fact. Defendants argue that Plaintiff's claim that their policy has prevented her from being able to build her law practice is completely speculative and cannot constitute injury-in-fact. An "injury-in-fact" is a harm that is "concrete and particularized" and "actual or imminent." *Id.* at 560. The plaintiff must show that she sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct and that the injury or threat of injury is both real and immediate. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiff argues that she has and continues to suffer harm as a direct result of Defendants' discriminatory policy of not providing interpreter services to deaf attorneys because it means that she cannot appear in court. As a result of Defendants' discriminatory policy, she: (1) has been unable to accept cases for representation that would require her to make court appearances; (2) suffers imminent harm in that she must turn away future cases for representation in court; (3) is unable to advertise that she accepts cases for representation in court; and (4) has been unable to build her practice through word of mouth. This is sufficient to establish injury-in-fact for purposes of standing.

Further, Plaintiff was not required, as Defendants argue, to make formal requests for interpreter services after she left the DPA and began working as a solo practitioner, because such requests were futile. Since Defendants refused her request for interpreter services while she was at the DPA and continue to refuse to acknowledge any obligation to provide auxiliary aids or interpreter services, such a request would have been futile and she is not required to make such a request. The futile gesture doctrine was recognized by the Supreme Court in *International Board of Teamsters v. United States*, 431 U.S. 324 (1977), when it affirmed a finding that a common carrier and union

discriminated in hiring and promotions in violation of Title VII. Although many of the defendants' employees applied for, and were discriminatorily rejected from, promotions, other plaintiffs had not applied because of the defendant's well-known discriminatory policies. The company argued that the non-applicants were barred from recovery because they did not experience discrimination directly. The Supreme Court rejected the argument and held that those that would have applied but for the company's practices satisfied the prima facie case. Here, Defendants acknowledge that it is "standard procedure" to tell attorneys requesting interpreter services that such services are not available to them. Plaintiff was aware of this policy because she made a request for services and was denied those services. It is reasonable that she did not make another request because she believed that such a request would be futile as a result of Defendants' policy.

Second, Defendants argue that Plaintiff has not shown that she meets the redressability requirement because there is no evidence that providing Plaintiff with sign language interpreters for in-court appearances will allow her to build her law practice. Plaintiff argues that any harm that she has suffered is traceable to Defendants' policy of not providing qualified interpreters to deaf attorneys. If Defendants were ordered to provide qualified interpreters when necessary to ensure effective communication with deaf attorneys, Plaintiff would be able to advertise that she can take cases for representation in court and would be able to accept such cases. In support, Plaintiff presents affidavits from two potential clients that were not able to retain Plaintiff because she cannot accept cases that require court appearances but would retain her if she could do so. This is sufficient evidence to show that the alleged harm may be redressed by a favorable decision in this action.

Alternatively, Defendants argue that Plaintiff is not entitled to injunctive relief because she lacks standing to seek future relief. Plaintiff argues that she has standing to seek future relief because as long as Defendants' policy is in place, she will not be able to accept cases or advertise

5

that she accepts cases. Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges a real and immediate - as opposed to a merely conjectural - threat of future injury. *Wooden v. Bd of Regents University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001). As long as Defendants' policy is in place, Plaintiff must turn away clients whose cases require court appearances. This harm is real and immediate. Since Plaintiff is more than likely to suffer harm in the future as a result of Defendants' policy, she has standing to seek injunctive relief.

### 2.     Statute of Limitations

Defendants argue that Plaintiff's claims are time-barred because her claims accrued in 2004 when Defendants implemented a court interpreting services program that provides interpreters for only parties, jurors and witnesses. For the reasons explained below, this argument fails.

Neither the ADA nor the Rehabilitation Act contain a statute of limitations. Thus, the most appropriate or analogous statute of limitations derived from the state law most applicable to the federal statute is to be used. *DelCostello v. Teamsters*, 462 U.S. 151, 158-59 (1983). Most civil rights actions are essentially claims to vindicate injuries to personal rights. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987)(action for discrimination is one for "fundamental injury to the individual rights of a person"); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)(claims which allege discrimination are best characterized as personal injury actions). Based on this guidance from the Supreme Court, most circuits have adopted a statute of limitations for ADA or Rehabilitation Act claims and have looked to the state's limitations period for personal injury actions. *See Everett v. Cobb County School District*, 138 F.3d 1407, 1409-10 (11th Cir. 1998)(listing circuits which have adopted the state's limitations period for personal injury actions). The most closely-analogous

Kentucky statute gives Plaintiff one year to commence suit. Ky. Rev. Stat. Ann. § 413.140(a); *Lewis v. Fayette County Detention Center*, 211 F.3d 1269 (2000).

The Kentucky statute begins the running of the statute of limitations once the cause of action accrues. Ky. Rev. Stat. Ann. § 413.140(a). A claim ordinarily accrues when a plaintiff has "'a complete and present cause of action'" or, stated differently, "when 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007)(quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)).

Defendants argue that Plaintiff's claims accrued in 2004 when the interpreter policy was enacted. Citing *Frame v. City of Arlington*, 2009 WL 1930045 (5th Cir. July 7, 2009), they urge the Court to adopt a policy that the claim accrues when the service, program or activity is made available to the public, such as when construction of a public facility is complete. *Frame*, however, was a facility accessibility claim, not a service accessibility claim. There, the construction of the sidewalk was the government service at issue; here, access to the court system is the government service at issue and the lack of an interpreter is the barrier to Plaintiff's access to that service. Such service access requirements, unlike facility access requirements, continue to apply even after a service, program or activity has been made available to the public. To find otherwise would destroy the requirement that governments provide persons with disabilities "meaningful access" to such services. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985). Governments continue to discriminate against persons with disabilities by providing court proceedings without interpreters or auxiliary aids. Therefore, so long as Plaintiff is denied meaningful access to Defendants' programs, the violation of the ADA continues. Plaintiff asserts that barriers still exist; thus, Plaintiff asserts a claim that falls within the statute of limitations. Further, Plaintiff claims that she requested and was denied

7

interpreter services in July 2007 and she filed this suit in April 2008, which is within the one-year statute of limitations.

### 3. Rehabilitation Act Claim

Defendants argue that Plaintiff's Rehabilitation Act claim fails because she cannot meet the "solely" requirement. Defendants argue that the policy on appointment of interpreters exists to provide reasonable accommodations to hearing disabled individuals who meet two requirements: (1) the individual is a party, juror or witness; and (2) the interpreting services are required for a proceeding in a Kentucky state court. Anyone not meeting those criteria is not eligible to participate in Defendants' interpreting services program so the discrimination does not result from the handicap alone. Since no attorneys are permitted to participate in the court interpreting services program, it is clear that her status as an attorney is the basis for the denial, not her status as a deaf person. Plaintiff responds that she is not seeking access to Defendants' "court interpreting services program;" instead, she seeks to participate in courtroom proceedings. Courtroom proceedings are inaccessible to her only because she is deaf and does not have auxiliary aids or an interpreter. Plaintiff argues that she is otherwise qualified to make court appearances and has claimed that she is being discriminated against because of her disability when Defendants refuse to provide auxiliary aids or interpreter services necessary to place her on equal footing with hearing attorneys. Plaintiff's claim is based on being treated differently than hearing attorneys with regard to access to court services, so Defendants' argument is without merit. It is a question for the trier of fact as to whether Defendants discriminated against Plaintiff based solely on her disability.

### 4. Sovereign Immunity on the Title II Claim

Defendants argue that they are entitled to sovereign immunity on the Title II claim because its immunity has been abrogated for due process claims, not equal protection claims. Plaintiff argues

8

that even if they are entitled to sovereign immunity, it only applies to the compensatory damages, not declaratory and injunctive relief. Insofar as the Plaintiff seeks declaratory and injunctive relief, the Court rejects Defendants' contention that they enjoy qualified and Eleventh Amendment immunity from suit in this case. Qualified immunity is available only to officials sued in their individual capacities for monetary damages for violation of federal rights. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). Suits against state officials for prospective injunctive relief are not barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 664 (1974).

With regard to the compensatory damages, Plaintiff argues that her case is similar to *Tennessee v. Lane*, 541 U.S. 509 (2004), wherein the Supreme Court found that Title II validly abrogates sovereign immunity as applied to all cases involving access to courts. In *Lane*, two individuals, both paraplegics who use wheelchairs for mobility, claimed that they were denied access to, and the services of, the state court system by reason of their disabilities. Lane alleged that he was unable to appear as a defendant in a criminal case and Jones, a certified court reporter, alleged that she was not able to gain access to a number of county courthouses so she lost both work and an opportunity to participate in the judicial process. The defendants argued that the suit was barred by the Eleventh Amendment, so the United States intervened to defend Title II's abrogation of Eleventh Amendment immunity. The *Lane* Court held that Title II constitutes a valid exercise of Congress' authority under § 5 of the Fourteenth Amendment to enforce that Amendment's substantive guarantees as it applies to the class of cases implicating the fundamental right of access to courts. This holding was narrowly crafted and limited to cases implicating the accessibility of judicial services.

Defendants contend that this case is controlled by the Sixth Circuit's decision in *Popovich v. Cuyahoga County Ct. of C.P.*, 276 F.3d 808 (6th Cir.)(en banc), cert denied 537 U.S. 812 (2002),

9

in which the court held that Title II of the ADA validly abrogated the States' Eleventh Amendment immunity for claims sounding in due process violations but not for equal protection claims. *Lane* specifically overrules *Popovich* with respect to the application of Title II to cases involving the right of access to courts. Since Plaintiff's case involves an access to courts claim, *Lane* controls and her ADA claim for compensatory damages is not barred by sovereign immunity.

### B. Plaintiff's Motion for Summary Judgment

In her motion for summary judgment, Plaintiff argues that there are no genuine issues of material fact and she is entitled to summary judgment with regard to declaratory and injunctive relief. She argues that Defendants' policy is facially discriminatory and asks the Court to invalidate the policy. Defendants argue that invalidating the policy is a drastic remedy and is improper because Plaintiff cannot demonstrate that the policy is contrary to the ADA and the Rehabilitation Act in every circumstance. While Plaintiff acknowledges that facial challenges are disfavored, she argues that the Sixth Circuit's concerns that a facial challenge will "leave nothing standing" are not applicable in this case because Defendants can still undertake a case-by-case inquiry whether auxiliary aids and interpreter services are necessary for effective communication.

Defendants also argue that Plaintiff is not entitled to declaratory judgment because declaratory judgment is not an absolute right and is not appropriate in this case. Defendants argue that the request for summary judgment on declaratory relief is "nothing more than an attempt to short-circuit this litigation and avoid consideration of Defendants' affirmative defenses" and would not resolve the matter. Plaintiff retorts that declaratory judgment and an injunction ordering Defendants to provide auxiliary aids and interpreter services when necessary to ensure effective communication with her would finally resolve the matter going forward and any further showing of intentional discrimination to recover damages would be with respect to past conduct.

Further, Defendants argue that Plaintiff has not met the standards necessary to obtain injunctive relief. Specifically, they contend that she has not shown a likelihood of success on the merits, has not shown that she will suffer irreparable harm, has shown no risk of harm to others, and has not established that she seeks relief that is in the public's interest. Plaintiff argues that all elements have been established.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.[2] A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids or services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12132(a).

Defendants have cited no legal authority to support their argument that the ADA and the Rehabilitation Act do not require them to provide attorneys with disabilities access to the state court system; instead, Defendants argue that because it is an issue of first impression whether the ADA and Rehabilitation Act extend to an attorney seeking an interpreter, the Court should refrain from ruling at this time. There is no support for a finding that Plaintiff does not qualify for protections

---

[2] The Rehabilitation Act was the predecessor to Title II of the ADA. The statutory language of each and the regulations promulgated under each are congruous and they are to be interpreted consistently. *See MX Group Inc. v. Covington*, 293 F.3d 326, 332 (6th Cir. 2002).

11

under the ADA and the Rehabilitation Act simply because she is an attorney and not a juror, witness or observer for which Defendants acknowledge they would be required to provide accommodations, and the Court sees no reason to refrain from making this finding.

The Court, however, is unable to find, as a matter of law, that the Defendants' actions, when viewed in their entirety, made court services inaccessible and unuseable by individuals such as Plaintiff, or that a reasonable trier of fact must conclude that a violation of the ADA or the Rehabilitation Act has occurred. Rather, in assessing whether any injunctive relief is proper in this case, it will be necessary for a trier of fact to determine whether, under the evidence presented, the Defendants' services are "readily accessible to and useable by individuals with disabilities." And whether Plaintiff's requested accommodations are reasonable.

The Defendants have also failed to present evidence to contradict Plaintiff's factual assertions that she is a qualified individual seeking access to a government service, the court system, and that she is unable to gain such access to the service because Defendants refuse to provide her with reasonable accommodations, i.e., auxiliary aids or interpreter services. Since there is no genuine issue of material fact as to Defendants' liability under the ADA and the Rehabilitation Act, the Court will grant Plaintiff's motion for declaratory judgment and injunctive relief.

### III. CONCLUSION

Based upon the foregoing and being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that:

(1) The Defendants' Motion for Summary Judgment [DE 44] is **DENIED**.

(2) The Plaintiff's Motion for Summary Judgment or Preliminary Injunctive Relief [DE 34] is **DENIED**.

(3) The Plaintiff's Motion for Summary Judgment in response to issues raised in Defendant's Motion for Summary Judgment [DE 48] is **GRANTED**.

(4)     The parties shall file a proposed revised scheduling order within fifteen (15) days from the date hereof.

This November 23, 2009.

Signed By:
*Karl S. Forester*   KSF
United States Senior Judge